UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL BLANDON, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>-against-<br><br>GEMINI EXPRESS TRANSPORT CORP. and HENRY FUNG,<br><br>Defendants. | MEMORANDUM AND ORDER<br><br>No. 25-CV-5924-NCM-JRC |

JAMES R. CHO, United States Magistrate Judge:

On June 4, 2025, plaintiff Michael Blandon ("Blandon" or "plaintiff") commenced this action, on behalf of himself and all others similarly situated, against Gemini Express Transport Corp. (the "Corporate Defendant" or "Gemini Express") and Henry Fung ("Fung" and together with the Corporate Defendant, "defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL") §§ 650 *et seq.* for failure to pay overtime compensation, failure to timely pay employees, and failure to provide wage statements and notices. *See* Compl. ("Compl."), Dkt. 1.

Currently pending before this Court, on referral from the Honorable Natasha C. Merle, is plaintiff's motion for conditional certification and leave to distribute notice, pursuant to 29 U.S.C. § 216(b). *See* Pl.'s Mem. of Law in Support ("Pl.'s Mem."), Dkt. 34. As set forth below, the Court grants in part and denies in part plaintiff's motion and permits plaintiff to send a modified notice and consent form to potential FLSA opt-in plaintiffs.

## I. Relevant Factual and Procedural Background

The following facts are largely taken from the Complaint and plaintiff's declaration

submitted in support of the instant motion, and are accepted as true for the purposes of evaluating the motion. *See Cooke v. Frank Brunckhorst Co., LLC*, 722 F. Supp. 3d 127, 132 (E.D.N.Y. 2024).

The Corporate Defendant, Gemini Express, is a "freight solutions and logistics service provider that offers the public [] Pickup and Delivery Cartage, Line Haul Services, Less Than Truck Load Services, Bonded CFS & Warehousing Services and TSA CCSF – Export Screening Services." Compl. ¶ 8; *see* Decl. of Michael Blandon ("Blandon Decl.") ¶ 5, Dkt. 35-1. Gemini operates warehouses in New York, California, and Illinois. Compl. ¶ 9. Defendant Fung is the Director of Operations at Gemini Express and oversees the day-to-day operations of the warehouses where plaintiff worked. *Id.* ¶¶ 13-14; Blandon Decl. ¶ 9. In that capacity, Fung exercised authority over personnel decisions at the warehouses. Compl. ¶¶ 13-17; Blandon Decl. ¶ 10. For example, Fung hired plaintiff and set plaintiff's pay rate. Compl. ¶¶ 15-16; Blandon Decl. ¶ 10. Fung also delegated his authority over Gemini Express personnel to Administrator Alan Lyn, Supervisor Kareem White, and Supervisor Brian Campbell, who supervised employees and scheduled employees' shifts via text messages or WhatsApp chats. Compl. ¶¶ 19-22; Blandon Decl. ¶ 10.

At any given time during the relevant period, defendants employed approximately 35 warehouse workers at each of two of defendants' locations: (1) 147-09 182nd Street, Springfield Gardens, New York 11413 and (2) 184-54 149th Avenue, Springfield Gardens, New York 11413. *See* Blandon Decl. ¶¶ 5, 12. Occasionally, plaintiff and other warehouse workers worked at a third Gemini Express warehouse located at 150-15 183rd Street, Springfield Gardens, New York 11413. *Id.* ¶ 12. The warehouse workers included breakdown workers, breakdown leaders, door agents, forklift operators, and loaders and unloaders, who

performed the same duties at the warehouses. *Id.* ¶ 13. All warehouse workers were supervised by defendant Fung, Alan Lyn, Kareem White and Brian Campbell. *Id.* ¶¶ 10, 12.

Defendants employed plaintiff from May 2023 to February 2025. Compl. ¶ 6; Blandon Decl. ¶ 4. Plaintiff worked as a breakdown leader and loader and unloader from May 2023 to August 2024, and as a forklift operator from approximately August 2024 to February 2025. Compl. ¶ 6; Blandon Decl. ¶ 4. From May 2023 to September 2024, plaintiff worked at the warehouse located at 147-09 182nd Street, and starting in October 2024, regularly worked at a new warehouse located at 184-54 149th Avenue.[1] Blandon Decl. ¶¶ 5-7.

Throughout plaintiff's employment, the Gemini Express warehouses operated 24 hours per day, 7 days per week, and were staffed by three teams of warehouse workers with staggered shift start times. *Id.* ¶¶ 19-20. Alan Lyn communicated to plaintiff by text message the number of workers needed and the start times for each team. *Id.* ¶ 20.

Blandon regularly worked more than forty hours per workweek throughout his employment. *See* Compl. ¶¶ 36-41; Blandon Decl. ¶¶ 22-23. Although plaintiff's work schedule varied, he typically worked from 9:00 a.m. to between 6:00 p.m. and 11:00 p.m., five or six days per week, including a one-hour break, for a total of forty to sixty-five hours per week. *See* Compl. ¶ 36; Blandon Decl. ¶ 22.

When Fung hired Blandon, Fung said that Gemini Express would pay plaintiff and all other warehouse workers at the rate of $15 per hour for all hours worked, in cash. Blandon Decl. ¶ 27. Defendants paid Blandon $15 per hour for the first two weeks of May 2023; $18 per hour from mid-May 2023 to December 2023; and $19 per hour from January 2024 through February 2025. Compl. ¶¶ 33-35; Blandon Decl. ¶ 26. Defendants paid plaintiff these hourly

[1] Paragraph 7 of plaintiff's declaration appears to contain a typographical error in the warehouse address – 184-**53** 149th Avenue. *See* Blandon Decl. ¶ 7.

rates for all hours worked, including those hours worked over forty hours in a workweek, without any overtime premium. *Id.*

Based on conversations with his co-workers, the staffing text messages, and his own observations, plaintiff learned that the other warehouse workers worked similar hours, were paid in cash and were not paid an overtime premium for overtime hours. *See* Blandon Decl. ¶¶ 24-33. Specifically, plaintiff worked alongside Oswaldo Gutierrez and Cairo Gonzalez and discussed their schedules, which included working more than forty hours per week. Blandon Decl. ¶ 24. In addition, plaintiff not only worked the same schedule as Cairo Gonzalez, they also lived together and commuted to work together. *Id.* ¶ 25. In January 2024, after New York raised the minimum wage from $15 to $16, Cairo Gonzalez, Oswaldo Gutierrez, Eliezer Valle, Nicholas Martinez, Julio Martinez[2] and Jairo Pablo Gonzalez Valle told plaintiff that defendants paid them for all their hours at the rate of $16 per hour. *Id.* ¶¶ 30-33. Throughout plaintiff's employment, defendants distributed cash wages to plaintiff and the other warehouse workers on his team in each other's presence. *Id.* ¶ 35.

Plaintiff received a bi-weekly timecard report that listed his clock-in and clock-out times, lunch break and total hours worked each day. *Id.* ¶ 37. The report also included the total hours worked each week during the bi-weekly time period. *Id.* Plaintiff contends that defendants knowingly, willfully, and intentionally failed to compensate him and other similarly situated employees for overtime worked in accordance with state and federal law. *See* Compl. ¶¶ 65-75.

On June 4, 2025, plaintiff commenced this action in the United States District Court for the Southern District of New York. *See* Dkt. 1. On October 6, 2025, plaintiff moved to change

[2] Plaintiff spelled the last names of Nicholas and Julio as Martine**z** and Martine**s**. *Compare* Blandon Decl. ¶ 31 *with* ¶ 33.

venue pursuant to 28 U.S.C. § 1406, which the court granted on October 14, 2025. *See* Dkts. 22-24.

On June 15, 2026, plaintiff filed the instant motion to certify the FLSA collective action. *See* Not. of Mot., Dkt. 33. Plaintiff seeks: (1) conditional certification of his FLSA claims as a collective action, pursuant to 29 U.S.C. § 216(b), comprised of "all current and former non-exempt warehouse workers who worked for Gemini Express Transport Corp. at warehouses located at: (a) 147-09 182nd Street, Springfield Gardens, New York 11413; (b) 184-54 149th Avenue, Springfield Gardens, New York 11413; and (c) 150-15 183rd Street, Springfield Gardens, New York 11413 at any point between June 4, 2022 to the present"; (2) an Order requiring defendants to produce within 14 days of the entry of the Order a list in Excel format containing the full names, dates of employment, last known addresses, email addresses, and telephone numbers for all individuals employed by the Corporate Defendant at any time from June 4, 2022 to the present; and (3) approval of the Proposed Notice and Consent and Reminder Notice forms. *See* Proposed Order, Dkt. 35-3.

In their opposition papers, defendants raise several objections to plaintiff's motion. Defendants contend that: (1) plaintiff failed to meet the burden of proof necessary for the Court to grant conditional certification; (2) plaintiff failed to show a common illegal practice at the warehouse located at 150-15 183rd Street; and (3) plaintiff failed to demonstrate that he is similarly situated to other employees. *See* Defs.' Mem. of Law in Opp. to Pl.'s Mot. for Cond. Cert. ("Defs.' Mem.") at 3-12, Dkt. 36. Defendants also raise the following objections to plaintiff's Proposed Notice: (1) plaintiff's request for employees' emails and phone numbers should be denied; (2) the notice period should be limited to two, rather than three years; and (3) the Proposed Notice is overbroad as to *all* "warehouse workers" at *all* warehouse locations. *See*

*id*. at 13-18.

## II. Discussion

### A. Conditional Certification Under FLSA § 216(b)

#### 1. Legal Standard

Pursuant to Section 216(b) of the FLSA, an employee may bring an action to recover unpaid overtime compensation against an employer who violates the Act's overtime provisions. *See Gonzalez v. Wicked Taco LLC*, 764 F. Supp. 3d 77, 94 (S.D.N.Y. 2025); *Cooke*, 722 F. Supp. 3d at 134; 29 U.S.C. § 207 (requiring an overtime rate of "not less than one-and-one half times the regular rate" for hours worked in excess of forty hours in a given work week). Under the statute, "one or more employees" may move to have their case certified as a collective action "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b); *see Gonzalez*, 764 F. Supp. 3d at 94; *see also Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010). Unlike a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, a collective action requires "similarly situated" employees to affirmatively opt-in to litigation by filing written consents "in the court in which such action is brought." 29 U.S.C. § 216(b); *see Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("Under the FLSA, by contrast, 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action."). *Gonzalez*, 764 F. Supp. 3d at 94. In addition, unlike a Rule 23 class action, the movant "need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality and adequacy of representation." *Cooke*, 722 F. Supp. 3d at 134 (quoting *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421, 2021 WL 4502479, at *2 (E.D.N.Y. Sept. 30, 2021)). Courts have discretion under this section to direct a defendant employer to disclose the names and addresses of similarly situated potential plaintiffs

and to authorize the sending of notice to those individuals, so that they may opt-in to the collective action. *See Myers*, 624 F.3d at 554 (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)); *Gonzalez*, 764 F. Supp. 3d at 104.

This process is often referred to as certification. *See Gonzalez*, 764 F. Supp. 3d at 94; *Cooke*, 722 F. Supp. 3d at 135. Courts determine whether certification of a collective action under the FLSA is appropriate in two stages. *See Gonzalez*, 764 F. Supp. 3d at 94; *Cooke*, 722 F. Supp. 3d at 134-35; *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 65 (E.D.N.Y. 2016); *see also Myers*, 624 F.3d at 554-55. The first stage -- referred to as conditional certification -- requires the court to make an initial determination, based on the pleadings and affidavits, about whether it would be appropriate to permit notice to be sent to individuals who are "similarly situated" to the named plaintiff in that they "were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555. "The sole consequence of conditional certification is the sending of court approved written notice to employees." *Genesis*, 569 U.S. at 74.

Although neither the FLSA nor its implementing regulations define the term "similarly situated," courts in this Circuit have held that plaintiffs can meet this burden by making a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted); *see Cooke*, 722 F. Supp. 3d at 135. "[T]he focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." *Gonzalez*, 764 F. Supp. 3d at 96 (quoting *Romero v. La Revise Assocs., LLC*, 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013)). "Courts regularly grant motions for approval of a collective action notice based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation

and identifying by name similarly situated employees." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (internal quotation marks omitted).

First-stage certification of a collective action "is only a preliminary determination as to which potential plaintiffs may in fact be similarly situated," and "merely provides an opportunity for potential plaintiffs to join." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003). Although the inquiry "cannot be satisfied simply by 'unsupported assertions,' . . . it should remain a low standard of proof." *Myers*, 624 F.3d at 555. "In making this showing, nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required." *Gonzalez*, 764 F. Supp. 3d at 95 (quoting *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016)); *Cooke*, 722 F. Supp. 3d at 135-36 (same). In accordance with this low standard of proof, at the first stage, the court "evaluates pleadings and affidavits, but does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Singh v. Anmol Food Mart, Inc.*, No. 22-CV-5475, 2024 WL 308241, at *2 (E.D.N.Y. Jan. 26, 2024) (internal quotation marks and citation omitted); *see Gonzalez*, 764 F. Supp. 3d at 100.

If the Court grants conditional certification at the first step, potential class members may then "opt in" to the action. *See Herard v. Japan Village Inc.*, No. 26-CV-123, 2026 WL 2970049, at *5 (E.D.N.Y. Oct. 2, 2026); *Cooke*, 722 F. Supp. 3d at 135. At the second step, after discovery, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. "If the Court determines that the opt-in plaintiffs are not in fact similarly situated, the class is decertified and the opt-in

plaintiffs' claims are dismissed." *Cooke*, 722 F. Supp. 3d at 135; *see Myers*, 624 F.3d at 555.

**2. Analysis**

Plaintiff contends that he has satisfied his "minimal burden" by showing that defendants maintained a common policy of failing to pay overtime wages to him and other warehouse workers employed at three warehouses. In opposing certification, defendants argue that plaintiff has not identified a common unlawful policy violating the FLSA and that plaintiff has not sufficiently demonstrated that he is similarly situated to all of defendants' warehouse employees. *See* Defs.' Mem. at 6-13. Plaintiff responds that (1) he has adequately alleged the common policy that all warehouse workers employed by defendants at three locations were not paid an overtime rate for hours worked in excess of forty; and (2) plaintiff's declaration is sufficient to demonstrate that he is similarly situated to other warehouse workers employed by defendants. *See* Pl.'s Reply at 2-6, Dkt. 37. The Court considers defendants' objections in turn.

**a. Whether Plaintiff has Presented Sufficient Evidence to Grant Conditional Certification**

Plaintiff seeks conditional approval to proceed with a collective action consisting of individuals including plaintiff and "all current and former non-exempt warehouse workers who worked for Gemini Express Transport Corp. at warehouses located at: (1) 147-09 182nd Street, Springfield Gardens, New York 11413; (2) 184-54 149th Avenue, Springfield Gardens, New York 11413; and (3) 150-15 183rd Street, Springfield Gardens, New York 11413 at any point between June 4, 2022 to the present." Pl.'s Mem. at 1. To succeed on his motion, plaintiff must show that he is similarly situated to potential opt-in plaintiffs "with respect to the allegedly unlawful policy or practice." *Hernandez v. City of New York*, No. 16-CV-3445, 2017 WL 2829816, at *3 (S.D.N.Y. June 29, 2017) (internal quotation marks omitted).

In opposition to conditional certification, defendants argue that plaintiff's allegations

"rest almost entirely on vague hearsay statements, generalized assumptions, and in several instances, double hearsay." Defs.' Mem. at 9. While defendants concede that plaintiff's burden of proof for conditional certification is low, *id.* at 4-5, defendants claim that "[p]laintiff's affidavit amounts to little more than generalized allegations and unsupported assumptions regarding other employees." *Id.* at 10.

At this initial stage, "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Heras v. Metro. Learning Inst.*, No. 19-CV-2694, 2021 WL 8650861, at *4 (E.D.N.Y. Sept. 28, 2021) (quoting *Jun Hua Yan v. Rainbow Nails Salon IV Inc.*, No. 18-CV-4970, 2019 WL 2166686, at *5 (E.D.N.Y. May 16, 2019)). Indeed, numerous courts in this Circuit have granted conditional certification based on the declaration and observations of only one individual. *See, e.g., Torres v. Rest Assured Roofing & Restoration, Inc.,* No. 25-CV-5716, 2026 WL 2665421, at *3 (E.D.N.Y. Sept. 10, 2026); *Gonzalez*, 764 F. Supp. 3d at 102; *Cooke*, 722 F. Supp. 3d at 140; *Han v. Madison Ave. Realties, LLC*, No. 22-CV-382, 2022 WL 2609003, at *3 (S.D.N.Y. July 8, 2022) ("There is no requirement that there be an affidavit from another employee for an action to be conditionally certified and notice to be authorized."); *Cheng v. Via Quadronno LLC*, No. 20-CV-8903, 2021 WL 4319569, at *3 (S.D.N.Y. Sept. 23, 2021) (explaining that "[a] single affidavit from a named plaintiff is enough to make th[e] [*Myers*] showing"); *Ni v. Red Tiger Dumpling House Inc.*, No. 19-CV-3269, 2020 WL 7078533, at *7 (E.D.N.Y. Nov. 30, 2020). In fact, courts have granted conditional certification even when the declarations submitted are "somewhat thin on details." *Gonzalez*, 764 F. Supp. 3d at 102; *Cooke*, 722 F. Supp. 3d at 140; *Lubas v. JLS Grp., Inc.*, No. 18-CV-6611, 2020 WL 4210754, at *7 (E.D.N.Y. July 22, 2020) ("such proof is sufficient to meet the low factual threshold for FLSA collective certification"). The Court must "draw all inferences in favor of the [p]laintiff," in considering a motion for conditional certification. *See Herard*, 2026 WL 2970049, at *6

(quoting *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-CV-8629, 2013 WL 5211839, at *4-5 (S.D.N.Y. Sept. 16, 2013)).

In support of his claims, plaintiff has produced his own sworn declaration, and the Court finds plaintiff's sworn statements sufficient for conditional certification. Plaintiff has made a sufficient showing that other similarly situated employees were not paid for overtime hours. *See* 29 U.S.C. § 207(a). Plaintiff's declaration is based on his personal observations and conversations with other employees, who told plaintiff that defendants failed to pay them overtime compensation.

It is well established that this Court may rely on plaintiff's indirect and hearsay evidence when ruling on a motion for conditional certification. *See Herard*, 2026 WL 2970049, at *15 n.8; *Torres*, 2026 WL 2665421, at *3 ("Plaintiffs may satisfy their burden at this first step through an affidavit containing hearsay."); *Han*, 2022 WL 2609003, at *3; *Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332, 2021 WL 148751, at *7 (S.D.N.Y. Jan. 15, 2021) ("[C]ourts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice."). This Court thus finds that plaintiff's sworn statement, when considered in conjunction with the allegations in the Complaint, are sufficient to support the inference that defendants had a uniform practice or policy of failing to pay overtime wages to warehouse workers in violation of the FLSA. Not only has plaintiff averred that he was subjected to this pay policy, but he knows from personal observations and conversations with his co-workers that "other Warehouse Workers were paid hourly rates similar to [plaintiff] for all hours worked per week and did not receive overtime pay," Blandon Decl. ¶ 33. *See Torres*, 2026 WL 2665421, at *3 (granting conditional certification where plaintiff "recounts conversations with these co-workers, . . . identifies several of these employees by name and declares that he personally observed them complaining to Defendants about the failure to pay wages"); *Gonzalez*, 764 F. Supp. 3d at 101-

02 (granting conditional certification based on plaintiff's "work experiences, personal observations and conversations with these individuals"). Plaintiff identifies six other warehouse workers by name, who worked similar hours and performed similar duties, and who were also paid straight-time for all hours worked. Plaintiff's sworn declaration therefore establishes that he and the putative opt-ins were similarly situated in terms of hours worked, duties performed, and pay received.

Defendants argue that "[p]laintiff's affidavit provides virtually no meaningful detail regarding the alleged conversations upon which his claims are based." Defs.' Mem. at 10. However, a plaintiff is not required to provide specific details about the circumstances surrounding his conversations with co-workers to satisfy his burden. *See Herard*, 2026 WL 2970049, at *15; *Cooke*, 722 F. Supp. 3d at 140. Here, plaintiff identified several co-workers by name and explained the context in which their conversations took place. *See Torres*, 2026 WL 2665421, at *3 ("Plaintiff is not required to state the precise time and place of individual conversations involving the at-issue pay practices."); *Gonzalez*, 764 F. Supp. 3d at 102; *Diaz v. Weinstein Landscaping*, No. 19-CV-6050, 2022 WL 801493, at *3 (E.D.N.Y. Feb. 28, 2022) ("By providing names of co-workers through Defendant Weinstein's testimony, Diaz has offered facts that push the allegations beyond conclusory, which would allow the Court to test those assertions and would give Defendants the ability to contest them."), *report and recommendation adopted*, 2022 WL 801322 (E.D.N.Y. Mar. 16, 2022). No more is required.

This Court finds that plaintiff has met the minimal burden of showing a factual nexus between himself and other warehouse worker employees who are similarly situated to plaintiff and who may have been subjected to a common policy or practice that violated the FLSA's overtime requirements. Thus, at this stage, plaintiff has made the "modest factual showing" to

warrant conditional certification, and defendants may renew their objections after discovery at which time the class of employees may be de-certified if the record reveals that they were not similarly situated. *See Torres*, 2026 WL 2665421, at *3; *see also Myers*, 624 F.3d at 555.

**b. Whether Plaintiff Is Similarly Situated to Potential Opt-In Members**

Defendants argue that this Court cannot certify the collective action because "plaintiff's own affidavit demonstrates that the 'Warehouse Workers' who he purported to represent were not similarly situated as himself." Defs.' Mem. at 12. Specifically, defendants argue that Warehouse Workers consisted of "a variety of different positions, including 'breakdown workers, breakdown leaders, door agents, forklift operators, and loaders and unloaders.'" *Id.* (quoting Blandon Decl. ¶ 12).

Potential members of the proposed collective need not be identical in every respect so long as all are similarly subject to the same unlawful policy or practice. *See Torres*, 2026 WL 2665421, at *2; *Zimnicki v. Krysiak Constr. Corp.*, No. 21-CV-4634, 2022 WL 17820139, at *8 (E.D.N.Y. Sept. 27, 2022); *Taveras v. D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018). "[D]ifferent job titles may be included within a conditional collective if there is evidence that plaintiffs may be similarly situated as to a common policy to violate the FLSA." *Cooke*, 722 F. Supp. 3d at 139 (quoting *Taveras*, 349 F.R.D. at 41). "Courts in this district and elsewhere routinely reject attempts to limit certification based on job function." *Cooke*, 722 F. Supp. 3d at 139; *Valerio*, 314 F.R.D. at 72 (collecting cases). As noted, the focus at the initial certification stage "is on the issue of whether the Plaintiffs were the victims of a common policy or plan which violated the law—and less so on whether the Plaintiffs performed identical job functions." *Cooke*, 722 F. Supp. 3d at 139 (granting conditional certification where the plaintiffs "submitted evidence which suggests that the

allegedly improper overtime policy was not limited to banquet servers, but rather was applied to all service employees") (quoting *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203, 2013 WL 8367807, at *4 (E.D.N.Y. Sept. 19, 2013)); *see also Garcia Ramos v. DNC Food Serv. Corp.,* No. 19-CV-2967, 2020 WL 2832776, at *6 (S.D.N.Y. June 1, 2020) (conditionally certifying collective including, "every conceivable type of employee of a delicatessen"). Accordingly, "[i]n the Second Circuit, courts routinely find employees similarly situated 'despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Cooke*, 722 F. Supp. 3d at 139 (quoting *Guaman v. 5 M Corp.*, No. 13-CV-03820, 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013)); *see Torres*, 2026 WL 2665421, at *2.

Plaintiff worked as a breakdown leader, loader and unloader, door agent and forklift operator, and defendants' failure to pay overtime continued throughout his employment regardless of his position. Plaintiff avers that "other Warehouse Workers worked similar hours to [plaintiff]" and specifically identifies six other warehouse workers, and their positions, who "were paid hourly rates similar to [plaintiff] for all hours worked per week and did not receive overtime pay." Blandon Decl. ¶¶ 24, 33. The aforesaid evidence rises above mere conclusory allegations. *See Han*, 2022 WL 2609003, at *4 ("By identifying names and positions, [p]laintiff makes a factual submission that the Court can test and defendants can 'attempt to refute.'"); *Cooke*, 722 F. Supp. 3d at 139. Notwithstanding defendants' arguments about specific job functions, work sites and employee positions, plaintiff has made a modest factual showing that plaintiff and the potential collective action members are victims of a common overtime compensation practice that violates the FLSA, and thus are similarly situated. *See,*

*e.g.*, *Torres*, 2026 WL 2665421, at *3; *Cooke*, 722 F. Supp.3d at 139. The fact that there may be "variations in positions and job functions" among the proposed class "do[es] not, at this preliminary stage, change th[is] result." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010); *see, e.g.*, *Milosavljevic v. Casa Cruz 61 LLC*, No. 25-CV-3490, 2026 WL 1508249, at *3-4 (S.D.N.Y. May 30, 2026) ("The mere fact that plaintiffs have different job titles . . . is not relevant to the question of whether they are 'similarly situated.'"); *Han*, 2022 WL 2609003, at *4 (granting conditional certification as to all building maintenance workers because they were subject to same policy of being denied overtime compensation); *Cohan*, 2013 WL 8367807, at *4 ("improper overtime policy was not limited to banquet servers, but rather was applied to all service employees"); *Williams v. Twenty Ones, Inc.*, No. 07-CV-3978, 2008 WL 2690734, at *1-2 (S.D.N.Y. June 30, 2008) (certifying FLSA collective action of sports bar's office workers, waiters, bartenders, runners, and bussers where plaintiffs alleged they were subject to common FLSA violations). The proposed collective, therefore, properly consists of all warehouse workers.

Accordingly, this Court finds that plaintiff has met his "low burden" to demonstrate that the Proposed Collective Members are similarly situated, and the Court conditionally certifies this matter as an FLSA collective action.

**c. 150-15 183rd Street Location**

Defendants argue that collective action certification should be denied as to the warehouse located at 150-15 183rd Street, where plaintiff worked only "occasionally." Defs.' Mem. at 6-7.

A plaintiff "must adduce enough evidence to support an inference of a common wage policy across all locations before a multi-location collective may be certified." *Munoz v. Grp.*

*US Mgmt. LLC*, 348 F.R.D. 192, 201 (S.D.N.Y. 2025); *see Herard*, 2026 WL 29700049, at *16. "Indeed, courts have declined to conditionally certify proposed collectives based on 'plaintiffs' mere belief that the policies are the same at . . . other [locations].'" *Jackson v. Total Relocation Servs., LLC*, No. 23-CV-4118, 2024 WL 4850814, at *5 (S.D.N.Y. Nov. 21, 2024) (quoting *Rojas v. Kalesmeno Corp.*, No. 17-CV-164, 2017 WL 3085340, at *5 (S.D.N.Y. July 19, 2017)); *see Heras*, 2021 WL 865061, at *6.

This Court agrees that plaintiff has not made a sufficient showing as to the 150-15 183rd Street location. *See Munoz*, 348 F.R.D. at 201-02, 205-06 ("While these facts weigh in favor of finding a common enterprise, they fall short of demonstrating that Defendants' wage and hours policies were the same at these different locations."); *Heras*, 2021 WL 8650861, at *6. Plaintiff does not specifically identify any employees by name or job title who regularly worked at the 150-15 183rd Street location. He has not demonstrated that defendants' wage and hour policies were the same at that location. *See Gonzalez*, 764 F. Supp. 3d at 99 ("sparse evidence of common control of workers and common policies that violate the FLSA"); *Heras*, 2021 WL 865061, at *6 ("Plaintiff fails to provide any foundation for her conclusory assertion that a factual nexus exists between defendants' FLSA violations against her and defendants' wage and hour policy for employees at the Jackson Heights and Brooklyn campuses."). In fact, plaintiff's only reference to that location is that he was sent there "occasionally." Blandon Decl. ¶ 12. Plaintiff fails to mention any specific conversations with others who worked at that location. *See Heras*, 2021 WL 8658061, at *6. Further, plaintiff fails to explain how he knows about the regular work schedules of employees at the 150-15 183rd Street location. Plaintiff has not "provided the Court with enough specifics to meet even the modest burden that [he] face[s] at this juncture to show that

the specific wage and hour policies of which [he] complain[s] were 'uniform' across all [locations]." *Munoz*, 348 F.R.D. at 206 (showing adequate only as to two locations where referenced employees worked) (internal quotation marks and citation omitted). Plaintiff provides only conclusory statements about the wage and hour policies at 150-15 183rd Street. Plaintiff has not submitted any evidence that warehouse workers at 150-15 183rd Street were subject to the same schedules and compensated in a similar fashion as plaintiff. *See Han*, 2022 WL 2609003, at *4 ("Plaintiff presents no evidence that the overtime compensation policies he challenges affected persons other than building maintenance workers who worked at 240 Madison Avenue."); *Heras*, 2021 WL 8650861, at *6 (no evidence "that would allow this Court to make a reasonable inference that" recruiters at different locations "are subject to the same schedules and violative wage practices as was plaintiff"); *Loh v. Kong Kee Food Corp.*, No. 20-CV-1597, 2021 WL 11688098, at *5 (E.D.N.Y. Feb. 26, 2021) ("Plaintiff fails to show that the same pay policies that plaintiff complains were applied to the wages of the LIC Factory workers . . . were also suffered by Chinatown Store employees."); *Taveras*, 324 F.R.D. at 45-46 ("Plaintiffs' allegations are too conclusory to demonstrate that porters and superintendents at locations other than where Plaintiffs worked are or may be similarly situated."). The Court, therefore, declines to authorize notice to warehouse workers who worked at the warehouse located at 150-15 183rd Street.

**B. Notice and Discovery**

**1. Notice Period**

Once a court determines that a plaintiff has satisfied his burden for initial certification of a collective action, the court may authorize issuance of a notice informing potential additional plaintiffs of the opportunity to opt into the lawsuit. *See generally Genesis Healthcare*, 569 U.S.

at 74; *Hoffmann-La Roche*, 493 U.S. at 171-72. Although the FLSA does not specify the contents of the notice to be provided, the district court has broad discretion "regarding the form and content of the notice." *Zimnicki*, 2022 WL 17820139, at *9.

Plaintiff requests that the Court authorize him to send to potential collective members a proposed "Notice of Lawsuit," proposed "Consent to Join Form," and a proposed "Reminder Notice," "to all warehouse workers employed by defendants in the three year period preceding the filing of the Complaint." *See generally* Prop. Notice, Consent and Reminder, Dkt. 35-2. Defendants object to the Notice period of three years. *See* Defs.' Mem. at 14.

Plaintiff requests that the proposed collective action include warehouse workers who worked for defendants at any time between June 4, 2022 – *i.e.,* three years prior to the filing of the initial Complaint – through the present. *See* Compl., Dkt. 1 (dated June 4, 2025). Defendants contend that plaintiff should be limited to two years because the FLSA statute of limitations is three years for willful violations and two years for non-willful violations, 29 U.S.C. § 255(a). *See* Defs.' Mem. at 14-15. Plaintiff counters that his FLSA claims plausibly allege that defendants willfully failed to pay him overtime wages. *See* Pl.'s Reply at 7, Dkt. 37.

The statute of limitations for an FLSA claim is either two years, or three years in the event of a willful violation. *See* 29 U.S.C. § 255(a); *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 191 (E.D.N.Y. 2015). Plaintiff alleges willful violations of the FLSA in the Complaint, *see* Compl. ¶ 65, and at the conditional certification stage, "allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Herard*, 2026 WL 2970049, at *18; *Torres*, 2026 WL 2665421, at *3; *see Cooke*, 722 F. Supp. 3d at 142-43.[3] As a result, at this stage, this Court finds it appropriate to permit conditional

---

[3] If appropriate, this Court can revisit any statute of limitations questions at a later stage." *Raimundi v. Astellas U.S. LLC*, No. 10-CV-5240, 2011 WL 5117030, at *2 (S.D.N.Y. Oct. 27,

certification of a collective action for a three-year period.

Plaintiff also requests equitable tolling of the statute of limitations for the putative FLSA collective from the filing of the Complaint until the close of any court-ordered opt-in period. *See* Pl.'s Mem. at 14-15. Defendants argue that plaintiff has not met his burden of showing exceptional circumstances to warrant equitable tolling. *See* Defs.' Mem. at 19-21.

> Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "[A] statute of limitations may be tolled as necessary to avoid inequitable circumstances." *Santiago v. Cuisine By Claudette, LLC*, No. 23-CV-2675, 2023 WL 8003323, at *7 (E.D.N.Y. Nov. 17, 2023) (quoting *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000)) (citations omitted).

For an FLSA action, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Aleman-Valdivia*, 2021 WL 4502479, at *7 (citing 29 U.S.C. § 256(b)). Accordingly, "[c]ourts frequently permit notice to be keyed to the three-year period prior to filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Herard*, 2026 WL 2970049, at *18 (quoting *Valerio*, 314 F.R.D. at 74). Although the Court denies plaintiff's application for equitable tolling in the absence of "extraordinary circumstances," the Court finds persuasive the reasoning of the cases ordering notice for the three-year period prior to the filing of the Complaint. *See Cooke*, 722 F. Supp. 3d at 143, 147; *Han*, 2022 WL 2609003, at *5. Not only is their reasoning consistent with the

---

2011). Should plaintiff fail to demonstrate that defendants acted willfully throughout the pendency of this matter, defendants may seek to limit plaintiff's claims at a later time.

remedial purposes of the FLSA, but also because collective action members should not be prejudiced by the lapse of time and any delays caused by the timing of briefing and review of a certification motion. *See Torres*, 2026 WL 2665421, at *3; *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *13 (E.D.N.Y. July 29, 2015). The Court directs that Notice be provided to potential opt-in plaintiffs employed by defendants since **June 4, 2022**. *See Herard*, 2026 WL 2970049, at *18; *Lopez v. Pio Pio NYC*, No. 25-CV-3998, 2026 WL 1067991, at *2 (S.D.N.Y. Apr. 20, 2026).

Finally, plaintiff must modify the proposed notice to add language advising that opt-in plaintiffs may retain their own counsel or proceed on their own behalf as a *pro se* litigant. *See Gardner v. Bloomingdale's Inc.*, No. 26-CV-4993, 2026 WL 3093985, at *2 (S.D.N.Y. Oct. 16, 2026),

Plaintiff is directed to modify all relevant documents and resubmit a revised Proposed Notice for the Court's approval.

**2. Distribution of the Notice and Consent Form**

Plaintiff requests authorization to send the Court-approved Notice and Consent forms to the Proposed Collective Members twice -- once to inform them of their right to opt-in within 60 days of mailing of the notice, and a second time with a Reminder Notice. *See* Prop. Order at 3.

Defendants do not object to plaintiff's request to send the Notice and Consent forms to the Proposed Collective Members within a 60-day opt-in period. This request is granted. *See Cooke*, 722 F. Supp. 3d at 144; *Cohan*, 2013 WL 8367807, at *12 ("[A] 60-day notice period for potential plaintiffs is common practice under the FLSA.").

Defendants also do not object to plaintiff's request for leave to mail a Reminder Notice, to be included when resending the initial Notice and Consent forms to potential opt-in plaintiffs.

Courts in this District generally have permitted reminder notices "in light of the remedial purpose of the FLSA." *See Meo v. Lane Bryant, Inc.*, No. 18-CV-6360, 2019 WL 5157024, at *13 (E.D.N.Y. Sept. 30, 2019) ("Significantly, the weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA.") (collecting cases); *Williams v. TSU Glob. Svs., Inc.*, No. 18-CV-72, 2018 WL 6075668, at *10 (E.D.N.Y. Nov. 20, 2018) ("Reminder notices are frequent components of FLSA collective action notices, which this Circuit typically allows to be distributed."), *report and recommendation adopted*, 2019 WL 1052673 (E.D.N.Y. Mar. 11, 2019). In light of the weight of authority permitting reminder notices and language in the Proposed Notice (to be sent with the Reminder Notice) that makes clear the Court takes no position in this matter, this Court grants plaintiff's request to serve the Reminder Notice on opt-in plaintiffs. *See Torres*, 2026 WL 2665421, at *4.

As to plaintiff's request that the Notice be posted at defendants' facilities, this request is granted. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Cooke*, 722 F. Supp. 3d at 144 (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)); *Torres*, 2026 WL 2665421, at *4; *Herard*, 2026 WL 2970049, at *21. The Court agrees that posting the notice in a public place at defendants' facilities is appropriate.

**3. Production of Information**

Plaintiff seeks discovery of the names, dates of employment, last known addresses, telephone numbers, and email addresses for all warehouse workers employed by defendants between June 4, 2022 and the present. *See* Pl.'s Mem. at 14. Defendants argue that plaintiff's request for email addresses and cell phone numbers should be denied because "such disclosure

would unnecessarily invade the privacy rights of current and former employees." Defs.' Mem. at 17.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Valerio*, 314 F.R.D. at 74-75 (internal quotation marks and citations omitted); *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 327 (E.D.N.Y. 2016) (ordering defendants to produce the names, addresses, telephone numbers, email addresses, and dates of employment of potential plaintiffs). "Courts have held that the dissemination of notices via mail, email, and text are appropriate vehicles." *Chen v. Thai Greenleaf Rest. Corp.*, No. 21-CV-1382, 2024 WL 3742718, at *5 (E.D.N.Y. Aug. 9, 2024) (citing *Carranza v. VBFS, Inc.*, No. 20-CV-2635, 2021 WL 1233546, at *19 (S.D.N.Y. Apr. 2, 2021)); *see Panora v. Deenora Corp.*, No. 19-CV-7267, 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020) (allowing notice to be provided through "forms of direct communication with potential plaintiffs – including mail, e-mail, text message, and direct social media channels such as WhatsApp and WeChat").

Here, defendants have not offered any reason to depart from these cases. *See Herard*, 2026 WL 2970049, at *21; *Cooke*, 722 F. Supp. 3d at 144; *Lora v. To-Rise, LLC*, No. 16-CV-3604, 2017 WL 11604705, at *19 (E.D.N.Y. July 18, 2017), *report and recommendation adopted*, 2017 WL 11604704 (E.D.N.Y. Sept. 15, 2017) (collecting cases).

Accordingly, this Court grants plaintiff's request and orders defendants to produce names, dates of employment, last known addresses, cell phone numbers, and email addresses of all potential opt-in plaintiffs, dating three years back from the filing of the Complaint (*i.e.*, from June 4, 2022 until the present), by **November 16, 2026**. This information shall be treated by the parties as confidential, and to the extent that the parties have not entered into a Stipulation and

Order of Confidentiality which includes this information, the parties are ordered to do so. Finally, defendants should produce this information in a computer-readable data file.

* * *

Subject to the modifications referenced above, the Court otherwise approves the contents of the Proposed Notice and Consent and Reminder Notice forms. Accordingly, once plaintiff has revised the Notice and Consent and Reminder Notice forms to reflect the requirements above, plaintiff shall serve a draft on defendants by **November 12, 2026**. By **November 19, 2026**, defendants shall serve any objections or give their consent. By **November 24, 2026**, the parties shall file a joint motion for Court approval of the revised Notice and Consent and Reminder Notice forms. That motion should attach the final version of the Notice and Consent and Reminder Notice forms. Upon the Court's approval of the final Notice and Consent and Reminder Notice forms, plaintiff shall distribute the Notice and Consent form **within two weeks**. Finally, all opt-in Consent forms must be filed with the Clerk of the Court **within 60 days** from the date the Court approves the final Notice and Consent form and Reminder Notice (the "Opt-in Period").

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part plaintiff's motion as follows:

(1) This action is conditionally certified as a collective action, consisting of any and all current and former warehouse workers who were employed by defendants at 147-09 182nd Street, Springfield Gardens, New York 11413 or 184-54 149th Avenue, Springfield Gardens, New York 11413 from **June 4, 2022** through the present.

(2) On or before **November 16, 2026**, defendants are directed to produce a computer-

readable data file containing the names, dates of employment, last known addresses, cell phone numbers, and email addresses of potential opt-in members employed by defendants from June 4, 2022 through the present.

(3) Plaintiff is authorized to disseminate the final approved notice and opt-in consent forms via first class mail, email and text within two weeks of the Court's approval of the final version of both documents.

(4) Plaintiff is permitted to send the final Court-approved reminder notice via first class mail, email and text 30 days after service of the first notice. The reminder notice must include the opt-in deadline.

(5) The opt-in period ends 60 days from the date the Court approves the final notice and opt-in consent form.

**SO ORDERED**

Dated: Brooklyn, New York
November 2, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge